WO                                                                                                            **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allan S. MacDonald, | No. CV 04-1001-PHX-SMM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Before the Court is Defendant Jabczenski's Motion for Summary Judgment (Doc. # 110). The motion is fully briefed (Doc. ## 147, 166, 214). The Court will deny the motion.

**I.    Background**

Plaintiff filed this 42 U.S.C. § 1983 action on May 18, 2004, against various Arizona Department of Corrections ("ADOC") employees and health care providers working under contract with ADOC. Plaintiff filed a Second Amended Complaint on March 25, 2005, and alleged in part that Defendant was deliberately indifferent to Plaintiff's serious medical needs related to a left knee injury (Doc. # 18 ¶¶ 60-65).[1] Plaintiff further alleged that Defendant's actions constituted medical malpractice. The Court ordered service on Defendant (Doc. # 19). Defendant has now moved for summary judgment, contending that he was not

---

[1] Plaintiff has also presented claims of deliberate indifference and medical malpractice against 25 other Defendants as to his Hepatitis C treatment and left knee injury. Those claims are not presently before the Court.

deliberately indifferent to Plaintiff's knee injury. Defendant further contended that he did not commit medical malpractice, a lesser tort.

## II.     Factual Background

The following facts are undisputed:

Defendant treated Plaintiff for a left knee injury on July 16, 1998 (Doc. # 111, Def's Statement of Facts ("DSOF") ¶ 10). An MRI taken on September 2, 1998 revealed that Plaintiff suffered a tear of the anterior cruciate ligament ("ACL") and a lateral meniscus tear (id. ¶ 11). Defendant determined that surgery was not warranted; he prescribed a Neoprene sleeve and arthroscopy for the meniscus tear (id. ¶ 12).

Plaintiff reinjured his left knee when he fell from his bunk in the Maricopa County Jail on December 23, 2002 (Doc. # 148, Pl's Statement of Facts ("PSOF" ¶ 10). On April 4, 2003, Dr. Hany Hannallah examined Plaintiff and ordered another MRI to assess the damage sustained from the fall (id. ¶ 12). On June 11, 2003, an MRI of Plaintiff's left knee was taken (id. ¶ 14). Plaintiff was transferred to ADOC custody on June 30, 2003 (id. ¶ 15).

Plaintiff again saw Defendant on November 6, 2003, regarding the new injury to Plaintiff's left knee (id. ¶ 18). This appointment took place through a telemedicine conference (id. ¶ 25).[2] During the November 6, 2003 appointment, Plaintiff was wearing long pants and remained seated during the entire appointment (id. ¶ 27). The only other individual in the conference room with Plaintiff was the video camera operator (id. ¶ 29).

Defendant's consultation report reflected that he recommended that Plaintiff continue with his knee brace and anti-inflammatory drugs for pain (Doc. # 148, Ex. 7). Plaintiff saw Defendant again three years later, on May 11, 2006 (DSOF ¶ 17). Plaintiff underwent knee surgery on August 24, 2006, where a possible recurrent left meniscus tear was noted and a loose bone fragment was removed (id. ¶ 18).

///

///

---

[2] During a telemedicine conference, a physician and inmate patient meet using videoconference equipment.

- 2 -

### III. Legal Standards

#### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). And the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

#### B. Deliberate Indifference

The Eighth Amendment requires that prisoners receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Under § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious

1  medical needs." Id.  The test for deliberate indifference consists of two parts in the Ninth
2  Circuit.  McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by
3  WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc).  A plaintiff must first
4  "show a serious medical need by demonstrating that failure to treat a prisoner's condition
5  could result in further significant injury or the unnecessary and wanton infliction of pain."
6  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir 2006) (internal quotations and citations omitted).
7  Second, a plaintiff must establish deliberate indifference to that need.  McGuckin, 974 F.2d
8  at 1060.  A state prison official is deliberately indifferent if he both knows of and disregards
9  an excessive risk to an inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This
10  requires a "purposeful act or failure to respond to a prisoner's pain or possible medical need"
11  and "harm caused by the indifference."  Jett, 439 F.3d at 1096.  Deliberate indifference may
12  be shown when an official denies, delays, or intentionally interferes with treatment or by the
13  way that a medical professional provides the care.  Id.  A prisoner need not show his harm
14  was substantial; however, such would provide additional support for the inmate's claim that
15  the defendant was deliberately indifferent to his needs. McGuckin, 974 F.2d at 1060.  If the
16  harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it]
17  ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

18  Negligence or medical malpractice does not establish a sufficiently culpable state of
19  mind.  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).  But a prisoner
20  does not have to prove that he was completely denied medical care in order to demonstrate
21  deliberate indifference.  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000).  "[A] mere
22  'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate
23  indifference.'"  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted).
24  To prevail on a claim involving choices between alternative courses of treatment, a prisoner
25  must show that the course of treatment the doctors chose was medically unacceptable in light
26  of the circumstances and that it was chosen in conscious disregard of an excessive risk to
27  plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).
28  ///

**IV.    Analysis**

    **A.    Plaintiff's Deliberate Indifference Claim**

The parties do not dispute that Plaintiff suffered from a serious medical need, thereby satisfying the first prong of the deliberate indifference test. Estelle, 429 U.S. at 104.

Therefore, the crux of Plaintiff's claim against Defendant rests upon his November 6, 2003 telemedicine appointment. Plaintiff asserts that: (1) Defendant failed to examine Plaintiff's knee and ignored Plaintiff's reported symptoms; (2) Defendant failed to read or obtain a copy of the June 11, 2003 MRI, despite the fact that Plaintiff told Defendant he was reading an outdated MRI; and (3) Defendant recommended anti-inflammatory medication for Plaintiff's symptoms even though Plaintiff suffers from "end stage" Hepatitis C and cannot take those medications (Doc. # 147). As a result, Plaintiff claims that his necessary knee surgery was delayed for nearly three years, subjecting him to extreme pain during that delay.

Defendant maintains that he consistently provided care to Plaintiff when requested (Doc. # 166 at 5). He claims that he recommended a conservative treatment plan to treat Plaintiff's knee injury, which precludes a finding of a purposeful failure to treat Plaintiff's injury (id.). Further, Defendant argues that even if the Court were to find him deliberately indifferent, the delay Plaintiff experienced did not cause him any harm. And finally, Defendant claims that Plaintiff's allegations must fail because he has not provided any expert witness testimony to support them (Doc. # 110 at 10).

The Court finds that genuine issues of material fact preclude summary judgment for Defendant and that a reasonable jury could conclude that he was deliberately indifferent to Plaintiff's serious medical needs.

    ***1.    Defendant's Actions During the November 6, 2003 Telemedicine Appointment***

The parties dispute what transpired during Plaintiff's November 6, 2003 appointment. Plaintiff claims that he attempted to convey to Defendant the symptoms he was experiencing and the results from his June 2003 MRI, but Defendant refused to listen and reviewed Plaintiff's 1998 MRI instead of the current report (Doc. # 149, Ex. 1 ¶ 32).

- 5 -


Defendant readily acknowledges that he has no independent recollection of what transpired during the November 6, 2003 appointment (Doc. # 149, Ex. 5 at Requests for Admissions Nos. 17, 19, 20, 21, 28, and 34). And notably, Defendant has not submitted an affidavit to contradict any of Plaintiff's assertions. The only evidence from Defendant is his consultation report from the November 6, 2003 appointment, which states that the physical examination revealed that Plaintiff had full flexion of the knee and that the recent MRI shows the preexisting ACL tear (Doc. # 111, Ex. 5). But this report conflicts with other evidence in the record in two important respects. First, Plaintiff has submitted his sworn affidavit that no physical examination took place because Plaintiff was wearing long pants and a knee brace and remained seated during the entire appointment, preventing Jabczinski from seeing Plaintiff's knee (Doc. # 149, Ex. 1 ¶¶ 24-25). Second, the consultation report refers to a "recent MRI" (Doc. # 111, Ex. 5). But it is transparent to the Court that the consultation report refers to Plaintiff's 1998 MRI as opposed to the June 2003 MRI because the consultation report makes no mention of the multiple bone infarcts and complicated tears, which were only mentioned in the June 2003 MRI. This conclusion is bolstered by Plaintiff's uncontradicted testimony that he realized Defendant was reviewing the outdated MRI and tried to tell him to no avail that a new MRI had been taken because of his December 2002 injury (Doc. # 149, Ex. 1 ¶ 31). Indeed, Plaintiff specifically attested that he did not seek treatment for his ACL tear, but the injury he sustained during his fall (id.). Consequently, the consultation report is not probative towards demonstrating the absence of a genuine issue of material fact for trial. The inferences from this evidence are as follows: a jury could infer that Defendant did not perform a physical examination on Plaintiff's knee on November 6, 2003, did not listen to Plaintiff's symptoms, and did not obtain or review Plaintiff's June 2003 MRI that revealed multiple bone infarcts. The jury could also infer that these actions were deliberate, based on Plaintiff's testimony that he tried to explain to Jabczinski that his injury was new and that a new MRI had been performed, but that Defendant refused to listen. Moreover, McGuckin makes clear that a single "egregious" failure can rise to the level of deliberate indifference. McGuckin, 974 F.2d at 1061.

1  Nor can the Court definitively conclude that Plaintiff did not require surgery in
2  November 2003. Defendant argues that there is no evidence that the loose body removed
3  from Plaintiff's knee in August 2006 was present in November 2003 (Doc. # 166 at 7-8). He
4  contends that the bone infarcts referenced in the June 2003 MRI *can* result in a loose body,
5  but do not always result as such (id.). In opposition, Plaintiff contends that Defendant
6  determined that surgery was appropriate *only after* reviewing the June 2003 MRI in May
7  2006. And Plaintiff has consistently argued that he told Defendant about the June 2003 MRI
8  in November 2003, but he would not listen. Most importantly, Defendant's own expert
9  opined that surgery was "definitely indicated" (Doc. # 111, Ex. 8 ¶ 5(d)). What Defendant's
10  expert was not aware of, however, was that the very reasons he believed surgery was
11  indicated were true and told to Defendant on November 6, 2003. The obvious inference from
12  this is that if Defendant had reviewed the June 2003 MRI in November 2003, Plaintiff would
13  have avoided nearly three years of pain and discomfort.

14  Perhaps most probative is Defendant's consultation report from Plaintiff's May 11,
15  2006 appointment (Doc. # 111, Ex. 6). The report states Defendant would like to see a copy
16  of the June 2003 MRI and "[i]f [Plaintiff] does have . . . a torn meniscus," surgery might be
17  appropriate (Doc. # 149, Ex. 9). And the June 2003 MRI report clearly states that Plaintiff
18  has "[c]omplicated tears in the anterior horn of the lateral meniscus" (Doc. # 149, Ex. 11).
19  For all the aforementioned reasons, the Court finds a reasonable jury could conclude that
20  Plaintiff would have undergone surgery in 2003 if, as Plaintiff has consistently argued,
21  Defendant had reviewed the June 2003 MRI in November 2003.

22  ### *2.   Harm Requirement*

23  Defendant correctly notes that a finding of deliberate indifference requires harm. Jett,
24  439 F.3d at 1096. But Defendant incorrectly suggests that the only way to demonstrate harm
25  is to establish "further injury" resulting from the delay in treatment.[3] Indeed "pain, mental
26  anguish, and suffering" are more than sufficient to constitute harm. Jones v. Johnson, 781

---

[3] Defendant cites McGuckin v. Smith for the proposition that further injury is required to establish harm. But there is nothing in that decision that requires *additional* injury.

- 7 -

1 F.2d 769, 771 (9th Cir. 1986) (extreme discomfort and pain suffered by an inmate due to a
2 delay in surgery can constitute deliberate indifference).

3 Further, Defendant has not provided the Court with any evidence suggesting the
4 absence of harm in this case. If Plaintiff was forced to wait nearly three years for necessary
5 knee surgery and endure the pain and limitations associated with his injury because a
6 physician refused to listen to him, the Court cannot fathom how that would not constitute
7 harm. As McGuckin aptly notes, "a finding that . . . a single failure was egregious strongly
8 suggests that the defendant's actions were motivated by 'deliberate indifference' to the
9 prisoner's medical needs." 974 F.2d at 1061 (citing Ortiz v. City of Imperial, 884 F.2d 1312,
10 1313-14 (9th Cir. 1989).

11 ### *3.    Expert Testimony Requirement*

12 Defendant also attacks Plaintiff's failure to introduce expert testimony to support his
13 claim. But the facts in this case are not so complex that an expert is required to assist the
14 trier of fact. See Ledford v. Sullivan, 105 F.3d 354, 359 (7th Cir. 1997); McKinney v.
15 Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991), vacated on other grounds sub. nom., Helling
16 v. McKinney, 502 U.S. 903 (1991); Hooker v. Adams, 2007 WL 4239570, * 1 (E.D. Cal.
17 Dec. 3, 2007).

18 ### *4.    Failure to Seek Treatment between 2003 and 2006*

19 Defendant makes much of Plaintiff's failure to seek treatment for his knee between
20 May 24, 2004 and March 26, 2006. It is unclear why Defendant has focused on these
21 arbitrary date parameters; the record reflects that Plaintiff complained of worsening knee
22 pain on November 26, 2003, March 4, 2004, and July 1, 2006 (Doc. # 149, Ex. 6 at 25). And
23 because the Court has determined that genuine issues of material fact preclude summary
24 judgment on Plaintiff's claim that Defendant was deliberately indifferent during his
25 November 6, 2003 telemedicine appointment, it is immaterial whether Plaintiff sought
26 treatment for his knee *after* November 6, 2003.

27 ///
28 ///

- 8 -

### *5.  Recommendation of Anti-Inflammatory Medication*

It is undisputed that Plaintiff suffers from Hepatitis C and that anti-inflammatory medication is oftentimes inappropriate for individuals with that disease (PSOF ¶¶ 84-86). And Defendant has failed to present evidence why it was appropriate to prescribe anti-inflammatory medication to Plaintiff. See Celotex Corp., 477 U.S. at 323. Consequently, Defendant is not entitled to summary judgment on this issue.

### **B.  Medical Malpractice Claim**

Because the Eighth Amendment deliberate indifference standard is higher than that of medical malpractice, Defendant is not entitled to summary judgment on Plaintiff's state law claim. Kelly v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990).

And while Defendant is correct that expert testimony is often necessary to establish medical malpractice, this case does not present issues so complex that a lay person would not be able to comprehend the issues. Indeed, the issues are quite simple; if a jury believes that Defendant deliberately ignored Plaintiff's attempt to explain to him what he was experiencing on November 6, 2003 and refused to read the June 2003 MRI—the same MRI that gave rise to Plaintiff's surgery in 2006—then a jury may find that Defendant's treatment constituted malpractice.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 110) is **DENIED**. This case will proceed to trial as to Plaintiff's claims of deliberate indifference and medical malpractice against Jabczenski.

DATED this 17th day of July, 2008.

_____
Stephen M. McNamee
United States District Judge